UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00027

UNITED STATES OF AMERICA
*ex rel.* MLE ENTERPRISES, INC., and
MLE ENTERPRISES, INC.                                               PLAINTIFFS

v.

VANGUARD CONRACTORS, LLC, and
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA                                                  DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on a motion for summary judgment by Defendant Travelers Casualty and Surety Company of America. (Def.'s Mot., Docket Number ("DN") 50.) The Plaintiff responded. (Pl.'s Resp., DN 54.) The Defendant replied. (Def.'s Reply, DN 55.) Fully brief, this matter is now ripe for adjudication. Having considered the matter and being fully advised, the Defendant's motion is **GRANTED**.

### I.

The Miller Act, 40 U.S.C. § 3131 *et seq.*, requires any person awarded a contract "for the construction, alteration, or repair of any public building or public work of the Federal Government" to provide the government with both performance and payment bonds. 40 U.S.C. § 3131(b). Any person who "has furnished labor or material in carrying out work provided in a contract for which a performance bond has been furnished . . . and has not been paid in full . . . may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought[.]" *Id.* § 3133(b)(1). An action for non-payment "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id.* § 3133(b)(4).

1

In the present action, Plaintiff MLE Enterprises, Inc. ("MLE"), seeks to recover for non-payment on a contract with Defendant Vanguard Contractors, LLC ("Vanguard"). Vanguard was the prime contractor on the Building 700 project at Fort Sill, Oklahoma. MLE worked as a subcontractor under Vanguard. As required by 40 U.S.C. § 3131(b), Vanguard obtained performance and payment bonds for the project. Defendant Travelers Casualty and Surety Company of America ("Travelers") served as surety on those bonds. In addition to suing Vanguard for breach of contract, MLE seeks to recover from Travelers under the payment bond for Vanguard's alleged failure to pay.

Travelers moves for summary judgment on grounds that MLE did not file suit within the one-year statute of limitations set forth in 40 U.S.C. § 3133(b)(4).

## II.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for

summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### III.

Upon review of the parties' arguments and the evidence, the Court finds that MLE's claims against Travelers are barred by the one-year statute of limitations founds in 40 U.S.C. § 3133(b)(4). MLE's complaint was filed on August 25, 2010, and was brought more "than one year after the day on which the last of the labor was performed or material was supplied" by MLE. Any work performed, material provided, or inspection made by MLE on or after August 25, 2009 (one year before the complaint was filed) was merely "remedial or corrective work or materials, or inspection of work already completed, [which] falls outside of the meaning of 'labor' or 'materials' under [40 U.S.C. § 3133(b)(4)]." *United States v. Int'l Fid. Ins. Co.*, 200 F.3d 456, 460 (6th Cir. 2000). In arriving at this conclusion, the Court examined three categories of evidence: 1) MLE's Application and Certificate for Payment, 2) statements by MLE's project manager, Kenneth Bronson, and 3) statements by Keith Adams of the Army Corp of Engineers. Analysis of each category is conducted below.

### 1.

In the complaint, MLE alleges that it "last performed work on the Project on or about August 28, 2009[.]" (Compl., DN 1, ¶ 10.) Evidence included with Travelers's motion for summary judgment contradicts this allegation. Specifically, the "Application and Certificate for Payment" produced by MLE during the course of discovery shows that MLE subcontracted with Vanguard for $1,350,342.85 in construction goods and services. (Application & Certificate for

3

Payment, DN 50-3, p. 1.) As of June 26, 2009, the date of the payment application, the "Total Completed & Stored to Date" amount of MLE's work was $1,350,342.85, the exact amount of the subcontract. (*Id.*) The application for payment itemizes the specific tasks to be completed under the subcontract. Among other things, each item is assigned a "Scheduled Value" and a "Total Completed and Stored to Date" value. Subtracting the "Total Completed and Stored to Date" value from the "Scheduled Value" produces the "Balance to Finish" in Column H of the payment application. (*Id.* at p. 2.) The "Balance to Finish" is a measure of the work yet to be performed by MLE. As of June 26, 2009, the "Grand Total" at the end of the payment application lists a $0.00 balance for the "Balance to Finish" for all work to be performed under the subcontract. (*Id.* at p. 10.) This does not mean that MLE had been paid the full amount of the subcontract. Rather, it indicates that MLE completed all the labor and materials necessary to receive full payment. Accordingly, the application for payment shows that MLE had completed all "labor" and "materials" under the subcontract by June 26, 2009, more than twelve months before it filed suit against Travelers.

2.

During discovery MLE also produced an affidavit and hotel bill for MLE project manager Kenneth Bronson. (Aff. Kenneth Bronson, DN 50-4, pp. 3-5.) According to Bronson, he "personally visited the site of the project and performed labor at the request of Vanguard and the United States Corps of Engineers on September 29, 2009 by checking doors for proper operation and making final adjustments as necessary." (*Id.* at p. 3.) MLE argues that summary judgment is inappropriate on statute of limitations grounds because Bronson's statements demonstrate that MLE performed "labor" or provided "materials" within the twelve month period prior to filing its complaint. Bronson's actions in September of 2009 will only lift MLE over the statute of

4

limitations if such actions were "labor" or "material" as those terms are used in 40 U.S.C. § 3133(b)(4).

In *United States v. International Fidelity Insurance Company*, the Sixth Circuit addressed "when 'the last of the labor was performed or material was supplied' for the purposes of [the statute of limitations found in 40 U.S.C. § 3133(b)(4)]." *Int'l Fid. Ins. Co.*, 200 F.3d at 459. The court first determined that the phrase "connotes more than mere substantial completion or substantial performance of the plaintiff's obligations under the contract." *Id.* (citing *United States ex rel. Austin v. W. Elec. Co.*, 337 F.2d 568, 575 (9th Cir. 1964)). That said, the court found that work would not be considered "labor performed" or "material supplied" if "done at the request of the government and pursuant to a warranty, subsequent to a final inspection and acceptance of the project." *Id.* Additionally, the court concluded "that remedial or corrective work or materials, or inspection of work already completed, falls outside the meaning of 'labor' or 'materials' under [the statute of limitations]." *Id.* at 460. Accordingly, work will only be considered "labor performed" or "material supplied" if it was performed "as a 'part of the original contract'" but will not toll the running of the statute of limitations where it was performed "for the 'purpose of correcting defects, or making repairs following inspection of the project.'" *Id.* (quoting *W. Elec. Co.*, 337 F.2d at 572-73.)) "[T]ests of remedial or corrective work do not qualify as 'labor' for the purposes of the Miller Act." *Id.* at 461.

In the present case, statements in Bronson's affidavit that he "performed labor . . . on September 29, 2009," are contradicted by his deposition testimony, which shows that his "labor" on September 29, 2009, was "remedial or corrective work . . . [that] falls outside of the meaning of 'labor' or 'materials' under [the statute of limitations]." *Id.* at 460. Bronson testified that September 29, 2009, was the last day that he or anyone else from MLE worked on the project.

5

(Dep. Kenneth Bronson, DN 50-5, p. 53:7-13.)  MLE's work on the project was substantially complete prior to that date.  (*Id.* at p. 53:14-23.)  To the best of Bronson's knowledge, punch lists – final inspection check lists common to construction projects – were completed for the project prior to that date.  (*Id.* at p. 54:2-7.)  Bronson worked on the project on September 29, 2009, because "there were several doors that needed to be repaired, or adjusted, because they were not operating properly."  (*Id.* at p. 54:11-14.)  When asked whether MLE's work on the project was final and complete before he made the door adjustment, Bronson responded, "I had hoped so, yes.  I assumed so, sure."  (*Id.* at p. 54:19.)

Based on Bronson's deposition testimony, the Court concludes that his work on September 29, 2009, was remedial or corrective in nature and not within the meaning of "labor" under 40 U.S.C. § 3313(b)(4).  Other evidence in the record confirms that Court's conclusion.  Tom Medina, Vanguard's project manager, categorized MLE's adjustment of the doors as a "warranty call," which occurred "past the punch list phase." (Dep. Tom Medina, DN 50-6, p. 210:9-20.)  Finally, a "Quality Control Report Daily Log of Construction" required by the Army Corps of Engineers and kept by Vanguard in the regular course of business logged MLE's activity on September 29, 2009, as "Warranty Issue on Doors, Closing and Gaps, MLE and subcontractor came and shimmed and adjusted doors." (Quality Control Report, DN 50-11, p. 31.)  In all, the record demonstrates that any work performed by MLE on September 29, 2009, was remedial or corrective in nature or was pursuant to a warranty.  Following the Sixth Circuit's holding in *International Fidelity Insurance Company*, such work was not "labor" within the meaning of 40 U.S.C. § 3133(b)(4) and did not toll the statute of limitations.

**3.**

Despite the foregoing conclusion, MLE contends that the work performed on September

29, 2009, was "labor" within the meaning of the statute of limitations because it was required "under the 'original-contract' as opposed to 'correction and/or repair.'" (Pl.'s Resp., DN 54, p. 7.) In support of its rebuttal, MLE relies on two emails from Keith Adams, a member of the Army Corps of Engineers involved in the project.[1] (*See* Email of Sept. 14, 2009, DN 54-1; Email of Nov. 11, 2012, DN 54-2.)

MLE's reliance on Adams's emails does nothing to alter the Court's determination that the work performed in September of 2009 was not "labor" within the meaning of 40 U.S.C. § 3133(b)(4). Rather, the emails confirm that the work performed was remedial or corrective in nature and did not toll the statute of limitations. In both emails Adams states that the doors and associated hardware required "adjustment." The term "adjustment" means "a *correction* or modification to reflect actual conditions." *Merriam-Webster's Collegiate Dictionary* 16 (11th ed. 2011) (emphasis added). Furthermore, to "adjust" means "to bring to a more satisfactory state." *Id.* Making a correction to the doors and bringing them to a more satisfactory state demonstrates that MLE's actions in September of 2009 were remedial and not "labor" under the terms of the original contract. Again, remedial actions do not toll the Miller Act's statute of limitations. *See Int'l Fid. Ins. Co.*, 200 F.3d at 459-61. Therefore, the emails do not alter the Court's conclusion that MLE failed to file suit against Travelers "no later than one year after the day on which the last labor was performed or material was supplied[.]" 40 U.S.C. § 3313(b)(4).

### III.

In a final effort to avoid summary judgment, MLE claims that 32 hours of work performed by Skipworth Contractors on August 26, 2009 – just one day within the one-year

---

[1] Travelers originally objected to the Court's consideration of these emails as inadmissible hearsay because they were submitted without Adams's affidavit or declaration as required by Federal Rule of Civil Procedure 56(c)(4). In a supplemental response, MLE submitted an affidavit from Adams that resolved the admissibility issues. (*See* Aff. Keith Adams, DN 68, pp. 3-4.)

statute of limitations period for MLE's August 25, 2010 complaint – should be imputed to it and thereby toll the statute of limitations. According to MLE, "Skipworth Construction was brought in to assist with labor and materials within MLE's scope of work." (Pl.'s Resp., DN 54, p. 3.) As the evidence shows, however, any attempt to impute Skipworth's work to MLE is without merit.

Any work performed by Skipworth cannot be imputed to MLE because Skipworth was not a subcontractor beneath MLE, and MLE did not hire Skipworth to perform any portion of its subcontract. Rather, Skipworth was hired by Vanguard to either complete work left incomplete by MLE or to correct defective work that MLE actually performed. Deposition testimony by Tom Medina, Vanguard's project manager, confirms that Vanguard, not MLE, hired Skipworth. (*See, e.g.,* Dep. Tom Medina, DN 55-2, pp. 101:4-102:5, 138:2-140:20.) The record conclusively shows that Skipworth was hired by and only did work on behalf of Vanguard. MLE supplies no evidence to contradict this point. The actions by Skipworth on August 26, 2009, cannot be imputed to MLE so as to toll the statute of limitations because Skipworth did not work for or on behalf of MLE.

## IV.

In all, the Court concludes that MLE's claims against Travelers are barred by the statute of limitations at issue. Even if the Court concluded otherwise, however, MLE's cause of action against Travelers is moot. In a separate memorandum opinion entered on this date, the Court granted summary judgment to Defendant Vanguard Contractors, LLC, because the evidence shows that MLE received full payment under the contract and suffered no cognizable loss. Therefore, MLE's claims against Travelers are now moot even if not barred by the applicable statute of limitations.

## CONCLUSION

Defendant Travelers Casualty and Surety Company of America moved for summary judgment against Plaintiff MLE Enterprises, Inc., on grounds that the MLE did not file suit prior to the running of the statute of limitations found in 40 U.S.C. § 3133(b)(4). For all of the foregoing reasons, Travelers's motion is **GRANTED**.

A separate order and judgment shall issue separately from this memorandum opinion.